# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 1825 | **DATE** | 2/7/2011 |
| **CASE TITLE** | Janis B. Reda vs. Estate of Mario R. Reda and Lisa Reda | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Court grants defendants Lisa Reda and the Estate of Mario Reda's motion to stay [doc. no. 11]. Plaintiff shall move to lift the stay within twenty days of the resolution of both the Appellate Court and Probate Division cases.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

### Facts

Plaintiff Janis Reda divorced Mario Reda on October 5, 1988 pursuant to a Judgment for Dissolution of Marriage ("Divorce Judgment"). (Compl. ¶ 8.) The Divorce Judgment granted plaintiff initial rights to one-half of the amount in Mario's State University Retirement System of Illinois ("SURS") account as of the day of the Divorce Judgment. (*Id.* ¶¶ 8-9.) The Divorce Judgment obligated Mario, if he died before retirement, to pay upon his death plaintiff's share of his SURS account. (*Id.* ¶ 10.) The Divorce Judgment also required Mario to protect plaintiff's interest by purchasing a life insurance policy or annuity. (*Id.* ¶ 14.) Mario did neither. (*Id.* ¶ 15.)

In 1993, Mario married Lisa Glaser and changed the beneficiary designation on his SURS account to Lisa and her two children. (*Id.* ¶¶ 12-13.) In January 2006, Mario was diagnosed with cancer. (*Id.* ¶ 16.) On February 4, 2006, Mario executed a will that left his entire estate to Lisa. (*Id.* ¶ 17.) On March 19, 2007, Mario quit-claimed his house to himself and Lisa as Tenants by the Entirety. (*Id.* ¶ 19.) On June 19, 2007, Mario died of cancer. (*Id.* ¶ 15.) At the time of his death, his Estate was worth $4,700.00, and as of August 9, 2009 it was worth $750.00. (*Id.* ¶ 25.) Around the time of his death, Mario's SURS retirement account was worth in excess of $730,000.00, which was distributed to Lisa and her children. (*Id.* ¶ 26.)

On June 18, 2009, plaintiff filed a claim in the Domestic Relations Division of the Circuit Court of Cook County to recover the monies due to her under the Divorce Judgment. (*Id.* ¶ 27.) On June 19, 2009, plaintiff filed a claim in the Probate Division of the Circuit Court of Cook County against the Estate of Mario Reda for her share of the SURS account under the Divorce Judgment. (Pl.'s Ex. 2, Probate Cl.) On January 19, 2010, the Domestic Relations Division entered a judgment in the amount of $160,121.00 in favor of Janis and against the Estate of Mario Reda. (*Id.*) The judgment remains unpaid. (*Id.*) On February 17, 2010, the Estate filed a notice of appeal of the January 19, 2010 order in the Appellate Court of Illinois. (Pl.'s Ex. 8,

| STATEMENT |
|---|

Notice of Appeal.)  The parties agreed to stay the Probate Division action pending the appeal of the Domestic Relations Division's order.  (Pl.'s Ex. 4, Sept. 10, 2009 Order Staying Probate Proceedings.)  On March 23, 2010, plaintiff filed the instant action to enforce the Domestic Relations Division's order against the Estate of Mario Reda to collect her share of Mario's SURS account.  (Compl. ¶ 35.)

## Discussion

To determine whether a stay is appropriate, the court must conduct a two-part analysis.  *Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 818-19 (1976).  First, the court must consider whether the concurrent state and federal actions are parallel.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 27 (1983) (explaining that cases are most likely parallel where the state court litigation is an adequate forum for the resolution of the issue between the parties); *see also Interstate Material Corp. v. City of Chi.*, 847 F.2d 1285, 1287 (7th Cir. 1988).  Here, plaintiff's state and federal actions involve the same parties and the same issues regarding judicial resolution of plaintiff's share of Mario Reda's SARS account.  Although plaintiff's federal suit is seeking different relief than her state court claims, mainly the enforcement of her share of Mario Reda's SARS account, such relief is entangled enough with the subject matter of the two state court cases to justify the conclusion that the resolution of both state court cases will dispose of the only claim in plaintiff's federal suit.  *See Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) (explaining that parallel cases need not be identical, but there should be a substantial likelihood that the state litigation will dispose of all claims in the federal case).  Therefore, the state and federal actions are parallel.

Next, the court must consider whether a number of non-exclusive factors demonstrate the existence of "exceptional circumstances," such that the court may abstain from exercising its jurisdiction and defer to the concurrent jurisdiction of the state court.  *See LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989).  These factors include: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.  *Id.* (citing *Colo. River Water Cons. Dist.*, 424 at 818-19).  Additionally, the Seventh Circuit has held that when a suit brought under diversity jurisdiction in federal court and a domestic relations proceeding in state court overlap, as is the case here, the district court may stay the federal suit to prevent it from operating as an engine of conflict or duplication.  *See Freidlander v. Freidlander*, 149 F.3d 739, 741 (7th Cir. 1998) (citing *Colo. River Water Cons. Dist*, 424 U.S. at 813-21).

This Court has weighed the various factors and finds that the third, fourth, fifth, sixth, seventh and eighth weigh in favor of granting a stay, while the other factors are neutral.  First, in order to avoid piecemeal litigation this Court should not enforce plaintiff's order against Mario Reda's estate until the Appellate Court rules on its validity.  *Clark*, 376 F.3d at 687 (explaining that a stay would not only save judicial resources, but it would also protect against the danger of two court's reaching inconsistent results).  Second, both the Appellate Court and Probate Court obtained jurisdiction over plaintiff's suit a year before the instant action was filed, and also have concurrent jurisdiction over the same claims being litigated in this Court.  Third, since all three cases are governed by Illinois law, it is better to defer to the Illinois courts to consider the issues presented.  *Day v. Union Mines, Inc.*, 862 F.2d 652, 660 (7th Cir. 1988) ("[A] state court's expertise in applying its own law favors a . . . stay.").  Moreover,  plaintiff's rights are adequately protected by the suit in the Probate Division, which has the power to set aside allegedly fraudulent conveyances by the decedent, thereby avoiding piecemeal litigation and ensuring proper distribution of Mario Reda's estate to his creditors.  *See Powell v. Capetta*, 733 N.E.2d 426, 436 (Ill. App. Ct. 2000).  Therefore, the Court concludes that the

| **STATEMENT** |
|---|
| aforementioned factors warrant a stay pending the resolution of both the Appellate Court and Probate Division cases. |