# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 1825 | **DATE** | 7/10/2013 |
| **CASE TITLE** | *Reda v. Estate of Reda et al.* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Lisa Reda's and the Estate of Mario Reda's ("Defendants") amended motion to strike and dismiss [43-1] is denied.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

For the reasons stated below, Lisa Reda's and the Estate of Mario Reda's ("Defendants") amended motion to strike and dismiss [43-1] is denied.

**Facts**

The following allegations are accepted as true for purposes of this motion. Janis and Mario Reda were married on July 10, 1965, and divorced on October 5, 1988, pursuant to a Judgment for Dissolution of Marriage entered by the Circuit Court of Cook County, Illinois ("Divorce Judgment").[1] (Compl., Dkt. # 1, ¶ 8.) The Divorce Judgment embodied the couple's agreement regarding, among other things, the division of their marital assets. (*Id*.) The Divorce Judgment granted Janis initial rights to one-half of the amount then in Mario's State University Retirement System of Illinois ("SURS") account, $32,460.00 (the "Initial Share"), and any and all later increases in the amount. (*Id*. ¶ 9.) In addition, the Divorce Judgment obligated Mario, if he died before retirement, to pay upon his death both the Initial Share and the increase in value to the Initial Share during the period between entry of the Divorce Judgment and Mario's death. (*Id*. ¶ 10.)

One week after the Divorce Judgment became final, Mario submitted to SURS a handwritten, witnessed Beneficiary Designation Form which failed to name Janis as a beneficiary, but which listed the couple's three children as beneficiaries of Mario's retirement benefits. (*Id*. ¶ 11.) In 1993, Mario got re-married to the former Lisa Glaser ("Lisa"), and they subsequently had two children. (*Id*. ¶ 12.) In 2002, Mario submitted a new beneficiary designation form to SURS, designating Lisa and their two children as his primary beneficiaries. (*Id*. ¶ 13.)

The Divorce Judgment required Mario to protect or secure Janis' interest in Mario's retirement account between the time of the couple's divorce and the time of Mario's exit from SURS by purchasing a

**STATEMENT**

life insurance policy or an annuity. (*Id*. ¶ 14.) The Divorce Judgment also obligated Mario to provide Janis with annual proof of purchase or maintenance of such policy or annuity. (*Id*. ¶ 14.)

Despite Janis' frequent demands in the 19-year period between October 1988 and June 2007, Mario purchased neither a life insurance policy nor an annuity as he agreed. (*Id*. ¶ 15.)

Mario was diagnosed with cancer in January 2006. (*Id*. ¶ 16.) On February 4, 2006, Mario executed a will, which left his entire Estate to his second wife Lisa. (*Id*. ¶ 17.) The will made no provision for Janis or the three children of Mario's marriage to Janis. (*Id*. ¶ 18.) On March 19, 2007, less than three months before his death, Mario quit-claimed a single-family house located at 819 North Monroe Street in River Forest, Illinois (the "Property") to himself and his then-wife Lisa as tenants by the entirety. (*Id*. ¶ 20.) The quit claim deed was recorded with the Cook County Recorder of Deeds on April 9, 2007. (*Id*.) Mario was the sole holder of title to the Property before he made this transfer. (*Id*. ¶ 21.)

Mario died of cancer on June 19, 2007. (*Id*. ¶ 25.) In September 2007, the total value of Mario's SURS retirement account was in excess of $730,000.00. (*Id*. ¶ 26.) This entire amount was distributed to Mario and Lisa's children through either lump sum distributions or annuities and Janis and the three children of Mario's first marriage received nothing. (*Id*.)

Having received no payments from Mario or his Estate, on June 18, 2009, Janis filed a Motion For A Rule To Show Cause Why A Constructive Trust Should Not Be Imposed On The Estate of Mario Reda in the Domestic Relations Division of the Circuit Court of Cook County, Illinois to recover the monies due her under the Divorce Judgment. (*Id*. ¶ 27.) On January 19, 2010, the Circuit Court entered a judgment in the amount $160,121.00 in favor of Janis and against the Estate of Mario Reda ("Circuit Court Judgment"). (*Id*.) The Circuit Court Judgment remains unpaid. (*Id*. ¶ 28.)

In this action, Janis alleges that Mario transferred title to the Property into tenancy by the entirety with the sole intent of avoiding the payment of the indebtedness then due and owing to Janis and leaving his Estate with insufficient assets with which to pay that indebtedness. (*Id*. ¶ 34.)

**Analysis**

<u>Subject Matter Jurisdiction</u>

The Court asked the parties to brief the application of the domestic relations exception to this Court's diversity jurisdiction. Janis filed a brief, and although given the opportunity to do so, Defendants did not respond. The domestic relations exception bars a federal court from exercising jurisdiction over cases involving "distinctive forms of relief associated with domestic relations jurisdiction" including divorce, annulment, and child custody. *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). It also includes ancillary proceedings, "such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding." *Id*. While the case stems from the parties' divorce, Janis is not asking the Court to grant her relief particularly associated with the divorce proceedings. She does not seek an adjudication of her alimony or property division rights, nor does she seek a remedy that requires continuing judicial supervision of a volatile family situation or enforcement of any portion of a decree that remains subject to modification by the Domestic Relations Division. The adjudication she requests does not require the application of expertise in domestic relations law. The property award has already been determined by the Divorce Judgment and has been reduced to a final amount by the judgment against the Estate. The action before us seeks a determination under a separate statute

governing the rights of parties holding property in tenancy by the entirety. The main factual issues revolve around Mario's intent at the time he transferred the property.

For these reasons, the Court concludes that the fraudulent transfer claim at issue here is sufficiently removed from the divorce proceeding that concerns of duplicative, piecemeal or inexpert handling are not present. *Lloyd v. Loeffler*, 694 F.2d 489, 493 (7th Cir. 1982) (with respect to the domestic relations exception, "the question is not only whether the exercise of federal jurisdiction will create a potential for inconsistent decrees but also whether it will result in piecemeal, duplicative, or inexpert handling of what is substantially a single controversy").

Motion to Dismiss

Janis moves to set aside the transfer of the Property under the following:

> All the lands, tenements, real estate, goods and chattels (except such as is by law declared to be exempt) of every person against whom any judgment has been or shall be hereafter entered in any court, for any debt, damages, costs, or other sum of money, shall be liable to be sold upon such judgment. Any real property, any beneficial interest in a land trust, or any interest in real property held in a revocable inter vivos trust or revocable inter vivos trusts created for estate planning purposes, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, *except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due*.

735 Ill. Comp. Stat. 5/12-112. "It is the standard elucidated in this statute, rather than in the state or federal fraudulent transfer statutes, that determines whether a transfer of property into tenancy by the entirety may be avoided." *In re Werner*, 410 B.R. 797, 806 (Bankr. N.D. Ill. 2009).

Defendants contend that no debt "existed" at the time of the tenancy by the entirety transfer on March 19, 2007, and therefore the complaint must be dismissed. However, as noted above, the complaint alleges that the "Divorce Judgment [entered on October 5, 1988] granted Janis initial rights to one-half of the amount then in Mario's [SURS] account, $32,460, and any and all later increases in the amount." (Compl., Dkt. # 1, ¶ 9.) This allegation is sufficient to allege an existing debt at the time of the transfer. Contrary to Defendants' assertion, the complaint need not "establish" that the Divorce Judgment creates an existing debt as this is only the pleading stage of the litigation, nor must Janis attach a copy of the Divorce Judgment to the complaint. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Finally, Defendants' request that the Court strike allegations that are unrelated to establishing an "existing debt" is denied. Motions to strike under Rule 12 are disfavored. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The allegations that Defendants seek to strike provide appropriate background information and factual support for Janis' claim.

Accordingly, the Court concludes that the domestic relations exception does not apply in this case and denies the motion to strike and dismiss.

**STATEMENT**

1. When referring to the parties individually, the Court uses their first names for ease of reference.